BARTLETT et al. v. FARRELL.

(Circuit Court of Appeals, Second Circuit. February 26, 1907.)

No. 147.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

Evidence, in an action for injury to an employé engaged in erecting a gas tank, caused by the scaffold on which he was at work being tipped by the raising of the tank, which could have been done only by the expansion of the gas from the heat of the sun, or by the pumping of compressed air into the tank, *held* sufficient to go to the jury on the questions whether it was raised by the pumping of compressed air, and, if so, whether it was negligence to do so without warning.

In Error to the Circuit Court of the United States for the Eastern District of New York.

Error to the Circuit Court of the United States for the Eastern District of New York to review a judgment entered on the verdict of a jury in favor of the plaintiff, for $4,600, for injuries received by him while in the employ of the defendants.

J. N. Tuttle and Frederick W. Catlin, for plaintiff in error.

M. J. France and George V. S. Williams, for defendants in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The plaintiff, while in the employ of the defendants, received injuries by falling from a scaffold while at work as a riveter on the frame work of a large gas tank which he, with other workmen, was engaged in erecting. The scaffold was constructed in the usual manner, but the plaintiff contends that the defendants were negligent in causing the tank to be raised, while the men were at work, without warning or opportunity to escape. The raising of the tank lifted the ends of the timbers on which the scaffold rested, causing it to tip so that one of the planks on which the plaintiff stood slipped off.

The case was sent to the jury to say whether the defendants were guilty of negligence in causing the tank to be raised without warning to the plaintiff. The defendants contended that the court should have directed a verdict in their favor.

The following propositions are established by the proof:

First. The plaintiff was injured by reason of the tipping of the scaffold.

Second. The scaffold could be tipped, in the manner described, only by raising the tank.

Third. The tank could be raised either by the natural heat of the sun or by pumping compressed air in, and in no other way.

Which of the two caused the tank to rise?

This was a question of fact, and, although the testimony was circumstantial in character and depended largely upon presumptions, we think sufficient was shown to justify its submission to the jury.

The plaintiff, who had been working on the tank for ten days prior to the accident, testified that he never knew the tank to be raised or lowered before, except after notice given to the workmen to take in

their scaffolds.   No notice was given on this occasion and he did not know that the tank was rising.   He was stepping from the left side of the scaffold facing outward to the right when it fell.   The planks were not nailed but were simply laid one on another.

Struck, a witness who was present at the time, noticed that the scaffold was in good condition fifteen or twenty minutes before the accident and was in disorder afterwards.   On one side there were two, or more, planks missing.   The tank had risen at least a foot and it seemed to the witness to be rising at the time.   One end of the rear plank had been forced back.

When the sun is hot in the middle of the day the tank will rise several inches because of the expansion of the heated air inside, but not as much as a foot.

The accident happened about 4 o'clock in the afternoon of the 14th of May, and, although the temperature on that day was not given, the witness testified that it was not a very warm day.   It is a fair presumption that as the afternoon progressed the effect of the heat on the tank must have decreased.

About fifteen minutes before the accident the witness noticed an upward movement of the tank.   He said:

"You can feel it with your foot; a kind of buzzing; feel it coming up a bit, by my feet.   It was going very slowly, you could see it with the naked eye by watching the goose-neck.   You could tell by reference to a mark that it would go about as fast as the long hand of a clock."

Another witness, Hickey, who went to the scaffold immediately after the accident, says:

"I saw the scaffolds on an incline from the tank, but some were high and some low.   That is the part next to the tank was high.   And then they all inclined out.   *   *   *   I saw the scaffold that Farrell fell from.   There was two or three planks missing from it and it looked a regular wreck."

Hickey also testified that the tank had risen from a foot to eighteen inches from the time he had been there before.   He was away about an hour and twenty minutes.

On a very warm day, if they pumped no air into the tank, it might rise, by the ordinary heat, three, or four, or five inches, "but in the afternoon, after the heat of the day had passed, it would be lowering naturally."

There was other testimony to the same effect.   No proof was offered by the defendants.

The court instructed the jury that if they found that the accident was caused by the ordinary daily rise and fall of the tank the verdict must be for the defendants, the risk being one which was assumed by the plaintiff.   If, on the contrary, the tank was raised up beyond the natural daily rise and fall, then it was for the jury to say whether the defendants were negligent in not giving the plaintiff warning.

The question is not whether the testimony is sufficient to convince us of the defendants' fault, but whether the trial court would have been justified in saying that there was no evidence to be submitted to the jury.   It cannot be denied that the proof of negligence was meager, unsatisfactory and circumstantial, and yet, we are unable to say that

the jury might not properly draw therefrom the inference that the defendants were at fault. The testimony leaves little doubt that the accident was caused by the raising of the tank. As before stated it could have been raised in one of two ways only; either by the heat of the sun or the pumping in of compressed air. The proof that the natural heat would cause a rise not to exceed five inches and that at four o'clock the tank would naturally be sinking instead of rising, in connection with the testimony that it actually rose from a foot to eighteen inches may, very properly, have induced the jury to eliminate the natural heat theory from their calculations. This being so, the raising of the tank could be accounted for only upon the theory that air was pumped in. If air were pumped in without warning, and it is undisputed that no warning was given, the jury might legitimately have reached the conclusion, especially in the absence of any denial or explanation, that the defendants were negligent.

The judgment is affirmed.